**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MAINE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| **JOHN DANIEL DEANE,** | ) | |
| | ) | Case No.: 23-20165-PGC |
| Debtor. | ) | |

**MEMORANDUM OF DECISION**

Debtor John Daniel Deane filed a Motion for Order Declaring State Court Order Void as Violation of Automatic Stay, Enjoining Enforcement Thereof, and for Sanctions (the "Motion"), Docket Entry ("D.E.") 67. Mr. Deane alleges that his ex-wife, Crystal Wallace, and her counsel violated the automatic stay and thereby harmed him. As set forth below, Mr. Deane's Motion is denied.

**Facts.**[1]

On February 14, 2023, the Maine District Court (the "State Court") issued a judgment related to divorce proceedings between Mr. Deane and Ms. Wallace. D.E. 60-2, pages 26 - 29. The judgment, which incorporated the parties' settlement agreement, awarded the parties' marital real estate to Mr. Deane and required him to pay Ms. Wallace $30,000 "on or before July 1, 2023 as a property settlement payment to effect the equitable distribution of property." *Id.* Mr. Deane filed for relief pursuant to chapter 7 of the United States Bankruptcy Code on August 3, 2023, at which time the automatic stay went into effect. D.E. 1. On March 4, 2024, before Mr. Deane received a discharge but while the automatic stay was still active, the State Court, in

[1] For the facts relied upon by the Court in considering the Motion, the Court looked to its docket, admissions of the parties, undisputed facts asserted in the pleadings of the parties, and facts to which the Court can take appropriate judicial notice.

response to a motion to enforce the divorce judgment filed by Ms. Wallace (the "Motion to Enforce"), issued an order again requiring Mr. Deane to pay the $30,000 property settlement obligation related to Mr. Deane and Ms. Wallace's divorce and further ordered him to pay $1,000 of Ms. Wallace's attorney fees. D.E. 86 at page 43. This Court issued Mr. Deane a chapter 7 discharge on April 1, 2024. D.E. 48.

Over two years later, on April 13, 2026, Ms. Wallace filed a contempt motion in the State Court seeking to enforce the $30,000 property settlement judgment. D.E. 50, pages 21–24. In response, Mr. Deane filed a Motion to Enforce Discharge and for Sanctions; or in the Alternative, to Reopen Case for Purposes of Enforcing the Discharge Injunction. D.E. 50. He also filed additional related pleadings. D.E. 60, 61. At a hearing on April 16, 2026, the Court granted Mr. Deane's request to reopen the case and effectively denied all other relief in the Motion to Enforce Discharge and for Sanctions; or in the Alternative, to Reopen Case for Purposes of Enforcing the Discharge Injunction. D.E. 64 Audio file; D.E. 66. Soon after, Mr. Deane filed the Motion now before the Court, which seeks different relief from that which Mr. Deane requested when he sought the reopening of this case. The Motion seeks an order declaring the "state court order entered in violation of the automatic stay to be void ab initio". D.E. 67.

A hearing on the Motion was held on July 28, 2026 during which the Court concluded that Ms. Wallace likely did violate the automatic stay by filing her March 2024 Motion to Enforce with the State Court. D.E. 115 Audio file beginning at 12:30. At the hearing, Mr. Deane was ordered to file an affidavit listing his claimed damages related to the violation. *Id.* He did so on August 6, 2026, maintaining that he incurred $2,203.79 of costs, lost income of $1,687.50, "non-compensable time burden" expenses of $5,512.50 (though he does not seek recovery of this

amount), and $5,000 of emotional distress damages. D.E. 121. Ms. Wallace filed a response to the affidavit, D.E. 122, and Mr. Deane replied to their response. D.E. 123.

**Discussion.**

The Court begins by noting that Mr. Deane spent a significant amount of time and energy, thereby requiring Ms. Wallace, Ms. Gould, and the Court to do so also, on an irrelevant issue which had no basis in law. Mr. Deane's arguments in support of the reopening of his case, spanning at least three pleadings and over 80 pages of submissions, centered around Ms. Wallace and her counsel's post discharge activities as violations of the discharge injunction. He alleged that their attempts in the State Court to enforce that court's divorce property award violated 11 U.S.C. § 523(a)(15). The fatal flaw in his arguments is that property settlements incident to a divorce, such as the $30,000 at issue here, are <u>not</u> dischargeable in a chapter 7 case, of which Mr. Deane's case is one. 11 U.S.C. § 523(a)(15).

Based upon the pleadings filed in this case, this appears to be one more effort by Mr. Deane to avoid the obligation that he agreed to back in 2023—to pay Ms. Wallace $30,000. In the divorce, Ms. Wallace and Mr. Deane made an agreement: she would convey her ownership in the parties' house to him, and he would pay her $30,000. Though she held up her end of the deal, he has not. While a bankruptcy discharge alleviates debtors from the requirement to pay some debts, chapter 7 debtors are not discharged from paying property obligations incident to a divorce.

Apparently realizing the futility of his efforts, Mr. Deane changed tack and recharacterized his challenges to repaying his debt to his ex-wife on the grounds that the State Court entered an order in violation of the stay.

The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Internal Revenue Serv. v. Murphy*, 892 F.3d 29, 36 (1st Cir. 2018) (quoting *Midlantic Nat. Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494, 503 (1986)). Once the bankruptcy petition is filed, the automatic stay provided under § 362(a) prevents creditors from taking actions against the debtor or property of the debtor's estate to collect on pre-petition debts. 11 U.S.C. § 362(a). Specifically, both the enforcement of a pre-petition judgment and any act to collect or recover a claim against a debtor are stayed pending the debtor's bankruptcy proceedings. 11 U.S.C. § 362(a)(2), (6). The automatic stay continues until the earliest of the closure of the bankruptcy case, its dismissal, or, in the case of chapter 7 cases, once a discharge is granted or denied. 11 U.S.C. § 362(c)(2).

Under § 362(k)(1), a debtor may seek to recover actual damages resulting from "any willful violation of a stay" and, in appropriate circumstances, may recover punitive damages. 11 U.S.C. 362(k)(1). A debtor seeking damages under § 362(k)(1) bears the burden of proving by a preponderance of the evidence that there was (1) a violation of the automatic stay, (2) that the violation was willfully committed, and (3) that the debtor suffered damages as a result of the violation. *Slabicki v. Gleason* (*In re Slabicki*), 466 B.R. 572, 577–78 (B.A.P. 1st Cir. 2012). A debtor must establish the extent of actual damages in some definite amount to recover damages. *See, e.g., Heghmann v. Indorf* (*In re Heghmann*), 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004) ("[A]ctual damages should be awarded only if there is concrete evidence supporting the award of a definite amount."). If a debtor meets their burden, damages under § 362(k)(1) are mandatory. *See Vázquez Laboy v. Doral Mortg. Co.* (*In re Vázquez Laboy*), 647 F.3d 367, 375 (1st Cir. 2011) ("There can be no question that, as a general matter, the statute mandates actual damages

[after the willful violation of an automatic stay]. And it would be impossible for a court to set the amount of actual damages . . . without taking evidence.").

The Court notes that Ms. Wallace, in her Objection and Response to Debtor's Affidavit of Costs and Damages, states that the Court found a violation of the automatic stay at the July 28 hearing. D.E. 122, ¶ 3. Mr. Deane repeats this in his Reply to Defendant's Objection to Affidavit of Costs and Damages (the "surreply") but adds that the Court found that Ms. Wallace *willfully* violated the stay in place when she moved to enforce the property settlement judgment against Mr. Deane in 2024. D.E. 123, pages 1, 2, 4. The Court made no determination of the willfulness of Ms. Wallace's violation of the stay during the July 28 hearing and in fact concluded only that it was "likely" that Ms. Wallace had violated the stay. D.E. 115 beginning at 12:30. Thus, although the parties arguably stipulated that Ms. Wallace did in fact violate the stay, the Court must confirm that Ms. Wallace violated the stay, and did so willfully, before any determination of damages due to Mr. Deane can be made.

1. Violation of the Stay

Unless some relevant statutory exception applies, none of which are argued to be applicable here, creditors are subject to sanctions when they take certain actions without having been granted relief from stay under § 362(d). *See Nelson v. Taglienti* (*In re Nelson*), 994 F.2d 42, 44 (1st Cir. 1993). The action complained of here was Ms. Wallace's motion for contempt which resulted in the March 4, 2024 State Court order requiring Mr. Deane to pay the $30,000 divorce-related property settlement along with $1,000 in attorney fees. D.E. 86, page 43. By filing that motion, Ms. Wallace violated both 11 U.S.C. § 362(a)(2) and (a)(6) as she sought to enforce a pre-petition divorce against Mr. Deane. *Cf. Foster v. Burns* (*In re Foster*), 574 B.R. 19, 26 ("The mere act of filing [a] Motion to Enforce violates § 362(a)(2) and (6).").

2. Willfulness of the Violation

A creditor willfully violates the automatic stay if they know of the automatic stay and take an intentional action that violates the stay. *Murphy*, 892 F.3d at 38. A good faith belief in a right to the property is "not relevant to determining whether the creditor's violation" is willful, *id.*, and mistake is no defense, *see Fleet Mortg. Group, Inc. v. Kaneb,* 196 F.3d 265, 268 (1st. Cir. 1999). This does not mean that there is a requirement that the creditor have the specific intent to violate the stay, only that a violation is willful if the creditor had knowledge of the stay and intended the actions which constituted the violation. *Id.* at 269; *see also In re Vázquez Laboy*, 647 F.3d at 374 (1st Cir. 2011). Specifically, the Court looks to whether or not a creditor received notice of the debtor's bankruptcy filing prior to an alleged automatic stay violation. *See Harvey v. United Techs.* (*In re Harvey*), 388 B.R. 440, 447 (Bankr. D. Me. 2008) (citing *Knaus v. Concordia Lumber Co.* (*In re Knaus*), 889 F.2d 773, 775 (8th Cir. 1989) for the statement that "[a] willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition").

Court records indicate that Ms. Wallace was sent notice via mail on August 7, 2023 that Mr. Deane filed for chapter 7 bankruptcy and again on April 1, 2024 when Mr. Deane received a discharge under 11 U.S.C. § 727. D.E. 10-3; D.E. 49. Additionally, there is at least one indication of Ms. Wallace's apparent knowledge of the pending bankruptcy proceedings via an email encounter between Mr. Deane and Ms. Wallace's counsel that took place on November 16, 2023. D.E. 50, page 14. In that email to Mr. Deane, Ms. Wallace's counsel stated that Mr. Deane had refused to provide useful documentation related to the bankruptcy case and a purported discharge of his obligations to Ms. Wallace. *Id.* This comports with the admission by Ms. Wallace's counsel during the July 28 hearing that Ms. Wallace was aware Mr. Deane was

either filing for bankruptcy or had already filed for bankruptcy around the time of filing the Motion to Enforce.

Ms. Wallace had formal notice of the bankruptcy proceedings within days of Mr. Deane's filing in August of 2023 and apparent knowledge of a pending bankruptcy proceeding no later than November of 2023 (when the emails between Mr. Deane and Ms. Wallace's counsel were exchanged). The automatic stay under § 362(a) was not lifted until Mr. Deane received a discharge on April 1, 2024. Because Ms. Wallace had notice and knowledge of Mr. Deane's bankruptcy petition when she filed the Motion to Enforce with the Maine District Court in March of 2024, this Court concludes that Ms. Wallace's violation of the automatic stay was willful.

3. Actual Damages Due to Costs Incurred and Lost Income

Debtors have a statutory right to prove actual damages after a willful violation of the automatic stay. *In re Vázquez Laboy*, 647 F.3d at 375 ("Such an opportunity is necessary . . . given the bankruptcy code's unequivocal mandate of actual damages following a willful violation of an automatic stay."). Actual damages include costs and attorney's fees as well as emotional damages. *See Fleet*, 196 F.3d at 269. Where appropriate, debtors may also recover punitive damages. 11. U.S.C. § 362(k)(1). As already discussed, a debtor seeking damages under § 362(k)(1) bears the burden of proving by a preponderance of the evidence that they suffered damages as a result of the willful violation of the automatic stay. *In re Slabicki*, 466 B.R. at 577–78. Mr. Deane's affidavit requests actual damages in the amount of $2,203.79 for various costs, $1,687.50 in lost income, and $5,000 related to emotional distress. D.E. 121, page 4. In his surreply, Mr. Deane also requests punitive damages. D.E. 123, page 4.

Debtors meet their burden of proof to recover damages under a willful stay violation by providing concrete evidence that the Court may use to calculate damages due. *See, e.g., Foster*,

574 B.R. at 30–31 (stating that a lack of concrete evidence upon which to calculate the amounts of fees and costs billed by legal counsel rendered the Court incapable of awarding damages for such fees and costs, and later stating that a "vague estimation . . . not supported by definitive testimony or documentation" did not support actual damages for medical costs). *But see Olsen v. Fin. Auth. of Me.* (*In re Olson*), 579 B.R. 658, 662–63 (Bankr. D. Me. 2017) (stating that the debtor failed to provide evidence of attorney's fees at trial but granting a modest recovery because the creditor willfully violated the automatic stay and the record showed that the creditor did not return improperly garnished funds until the debtor took action to recover them). "Speculation, guess, or conjecture alone will not support an award." *In re St. Laurent*, No. 19-10213, 2019 WL 3783311, at *1 (Bankr. D. Me. Aug. 12, 2019) (citing *Heghmann*, 316 B.R. at 405).

Stated plainly, neither Mr. Deane's affidavit nor surreply include concrete evidentiary support of his claimed damages such as receipts, statements, invoices, or other supporting documentation of the kind that is expected when substantiating actual damages based on fees or costs incurred. Mr. Deane does note in his affidavit that he maintains such records and that they are available upon request, D.E. 121, page 4, but that request was made by the Court during the July 28 hearing via the Court's request for the affidavit. As discussed further below, because there is no supporting documentation, there is also no way for the Court to confirm which expenses were outlaid related to the violation of the stay versus other litigation or uses, a relationship between the violation and damages that Mr. Deane must prove to recover damages under § 362(k). *In re Slabicki,* 466 B.R. at 578. Additionally, unlike in cases such as *In re Olsen* where the record clearly shows that a debtor was forced to incur costs to retrieve from creditors improperly retained assets, there is no indication in the record that the same or something similar

occurred here. Thus, Mr. Deane's claimed damages related to costs incurred have not been proven by a preponderance of the evidence, and this Court cannot speculate on what damages, if any, are supported. *See In re Perrin*, 361 B.R. 853, 857 (B.A.P. 6th Cir. 2007) ("Where there was no proof in the record concerning actual damages suffered by the Debtors, the bankruptcy court properly declined to award damages, which could only have resulted from speculation.").

For identical reasons, Mr. Deane's claim for lost income fails, as no evidence has been produced by Mr. Deane supporting lost income damages other than his own short testimony which itself provides unclear support for his claim. *Cf. Bilfield v. Bilfield* (*In re Bilfield*), 494 B.R. 292, 303 (Bankr. N.D. Ohio 2013) ("The debtors presented some general evidence about lost income, but it was not presented in sufficient detail to allow the court to determine exactly how much income the debtors lost . . . . As a result, damages cannot be awarded . . . .").

Assuming, for the sake of argument, that Mr. Deane did provide supporting documentation substantiating his claimed damages, Mr. Deane still failed to prove that these claimed damages resulted from Ms. Wallace's stay violation. Without some foundational willful violation causing damages, "the damages provision of § 362 by its terms is irrelevant." *In re Slabicki, 466 B.R. at 578* (citing *In re Vázquez Laboy*, 647 F.3d at 373–74). Mr. Deane's affidavit states that his costs are a "direct result" of the stay violation and "the necessity of defending against the void state court proceedings[.]" D.E. 121, page 1. Mr. Deane's surreply further states that "[b]ut for" the defendant's filing of the Motion to Enforce during the pendency of the automatic stay, "none of the subsequent events would have occurred." D.E. 123, page 3. These declarations themselves, however, do not prove causation.

Mr. Deane unfortunately fails to acknowledge a simple truth that defeats many arguments that his claimed damages are the result of the stay violation. The debt at the center of this multi-

year conflict between himself and Ms. Wallace is a non-dischargeable debt in a chapter 7 case. *See* 11 U.S.C. § 523(a)(15); *see also* D.E. 115 Audio File at 5:50 (discussion at hearing in which Mr. Deane agreed with the Court that the debt is in fact non-dischargeable under § 523(a)(15) and that Mr. Deane's original motions arguing otherwise were based on incorrect advice he received). While this does not negate the fact that Ms. Wallace willfully violated the automatic stay, it does mean that, regardless of the violation, Ms. Wallace has a legally defensible claim under bankruptcy law for enforcing the non-dischargeable property settlement that was entered into judgment more than two years ago. Had Ms. Wallace waited roughly one month before filing the Motion to Enforce in March of 2024, after Mr. Deane received a discharge under § 727, Mr. Deane would have no defense under bankruptcy law to turn to in seeking protection against the enforcement of the pre-petition judgment. Stated simply, even with Ms. Wallace's violation of the stay, Mr. Deane was in an identical position before the stay violation as well as after: he must pay the non-dischargeable property settlement judgment or face sanctions.

The Court therefore agrees with Ms. Wallace that Mr. Deane "would have faced the same enforcement issues and incurred the same expenses in any event." D.E. 122, page 7. The Court also agrees with Ms. Wallace that § 362(k) compensates debtors who have been injured by stay violations; it does not shift expenses that would have been incurred regardless of filing. D.E. 122, page 7; *see* § 362(k)(1). Mr. Deane states that Ms. Wallace's reply to his affidavit "ignores the direct causal link between her post-petition Motion to enforce and the cascade of hearings and costs that followed[,]" D.E. 123, page 1, but Mr. Deane himself ignores the reality that he owes Ms. Wallace a $30,000 non-dischargeable property settlement regardless of any stay violation.

Thus, while Ms. Wallace was not entitled to violate the automatic stay, it does not stand to reason that Mr. Deane's claimed damages are the result of that violation. Additionally, it does not stand to reason that Mr. Deane's post-violation actions were appropriate in the light of less costly or time-consuming alternatives, such as attempting to work out a payment plan related to the property settlement obligation. This is relevant because while courts must defend the protections of the automatic stay, they must also ensure that actions taken by or on behalf of a debtor are "appropriate in light of less costly or time-consuming alternatives." *Olson*, 579 B.R. at 663 (quoting *In re Silk*, 549 B.R. 297, 303 (Bankr. D. Mass. 2016). Mr. Deane also could have formally or informally requested that Ms. Wallace withdraw the Motion to Enforce until the discharge had been ordered; Ms. Wallace indeed may have been receptive to this request, given "[p]rompt withdrawal may eliminate or reduce any resulting damage" related to the filing of such motions. *Foster*, 574 B.R. at 26.

Thus, Mr. Deane has failed to prove by a preponderance of the evidence that the claimed damages of costs and lost income resulted from Ms. Wallace's willful stay violation, and the Court denies any recovery of claimed such damages.

4. <u>Actual Damages Due to Emotional Distress</u>

Unlike costs and fees, or lost income, damages due to emotional distress are somewhat less likely to have clear supporting documentation that allows a court to determine an exact dollar amount recoverable by a debtor, save possibly for related medical bills. As such, there is more discretion in awarding damages due to emotional distress. For example, in one case, unrebutted testimony from a debtor and his spouse was sufficient evidence to support modest damages for emotional distress. *Ocasio v. Ocasio* (*In re Ocasio*), 272 B.R. 815, 824–25 (B.A.P. 1st Cir. 2002) ("[T]he record amply supports the award . . . because of the Debtor's testimony

that he was embarrassed and felt threatened, as well as his wife's testimony that the Debtor was disturbed and had to seek medical treatment."). In another, testimony from the debtor, an elderly widower, was similarly sufficient to support damages for mental anguish. *Fleet*, 196 F.3d at 269–70 ("[Debtor] provided specific information about the sharp decline in social invitations and outings following [the creditor's] violation of the automatic stay . . . ."). It may be the case that, had Mr. Deane proven his claimed emotional damages were the result of the willful stay violation, Mr. Deane would be entitled to a modest emotional damages award.

However, like all actual damages under a willful violation of § 362(a), a debtor cannot recover damages for emotional distress unless that distress is a result of the violation. *Cf. In re Slabicki*, 466 B.R. at 578 (requiring the debtor to prove by a preponderance of the evidence that they suffered damages as result of a willful stay violation). As discussed above, Mr. Deane has failed to prove his claimed damages are the result of the willful stay violation, and so, similarly, his claim for emotional damages also fails.

5. Punitive Damages

Whether or not punitive damages are appropriate is left to the sound discretion of the bankruptcy court, although such damages "usually require more than [a] mere willful violation" of the automatic stay. *Heghmann*, 316 B.R. at 405. Courts often limit the imposition of punitive damages to cases where there is "egregious, intentional misconduct[,]" and some courts consider their deterrent effect in determining punitive damages. *Id.* at 405–06 (quoting *Lovett v. Honeywell, Inc.*, 930 F.2d 625, 628 (8th Cir. 1991).

Beyond the fact that the claimed damages have not been found to be the result of Ms. Wallace's willful stay violation, and thus Mr. Deane cannot recover damages under § 362(k), Ms. Wallace's violation did not rise to the level of "arrogant defiance" that this Court has looked

to in the past when determining the appropriateness of punitive damages. *See Foster*, 574 B.R. at 31 ("Punitive damages are intended to cause change in a creditor who is found to have acted in 'arrogant defiance' of the Code.") (quoting *In re Panek*, 402 B.R. 71, 77 (Bankr. D. Mass. 2009)). Additionally, while a mistake of law is not a defense to liability under § 362(k), such a mistake is a mitigating factor with respect to punitive damages. *Id.*

During the July 28 hearing, counsel for Ms. Wallace stated that at the time of filing the Motion to Enforce in March of 2024, she did not know whether or not there was a stay in place, representing instead that Mr. Deane "had indicated he was going to file for bankruptcy" or had filed for bankruptcy, but that Mr. Deane did not respond to queries for proof. D.E. 115 Audio file at 9:40. Ms. Wallace "proceeded on the belief that [the property settlement obligation] was a non-dischargeable debt" and filed the Motion to Enforce. *Id.* at 10:00. As previously discussed, the property settlement obligation is a non-dischargeable debt under § 523(a)(15). While it was a mistake to attempt to collect on the divorce judgment without obtaining relief from stay (regardless of whether the judgment was non-dischargeable), and while that mistake resulted in a willful violation of the automatic stay, there is no indication that Ms. Wallace's filing of the motion was egregious, intentional misconduct. Thus, no punitive damages are awarded to Mr. Deane.[2]

---

[2] Even if Mr. Deane were able to overcome the infirmities in his attempt to recover damages described above, he would face further difficulties by the application of the doctrine of laches. Though the Code has no statute of limitations for actions seeking damages based on 11 U.S.C. § 362(k), bankruptcy courts, as courts of equity, may apply the equitable doctrine of laches. *Soriano v. Wells Fargo Bank, N.A. (In re Soriano)*, 587 B.R. 371, 389 (Bankr. W.D. OK 2018); *In re Adams*, 212 B.R. 703, 712 (Bankr. D. Mass. 1997); *See In re Smith Corset Shops, Inc.*, 696 F.2d 971, 977 (1st Cir. 1982) (" We ... hold that [the debtor] could not remain stealthily silent when it knew that the [stay was being violated] and then turn around and successfully sue the [creditors] for the alleged conversion.... We do not think Congress envisioned any such misuse of the automatic stay."). Mr. Deane waited nearly 26 months after the issuance of the State Court order and 25 months after the closing of his case before raising the stay violation issue.

6. Status of the March 4, 2024 State Court Enforcement Order

Having concluded that Ms. Wallace willfully violated the automatic stay within the definition of 362(k), the Court now confirms the status of her Motion to Enforce (and, more to the point, the status of the State Court's March 4, 2024 enforcement order).

Courts must "display a certain rigor" in response to violations of the automatic stay given the importance of the function of the automatic stay and the protections it brings. *In re Soares*, 107 F.3d 969, 975–76. The majority of courts, including those in the First Circuit, treat actions in violation of the stay as void while recognizing that "equitable considerations may alter some outcomes." *Id.* at 976 (citing multiple cases). This is because the automatic stay, while significant, "is not an immutable article of faith" under the Code; § 362(d) expressly authorizes courts to lift the stay in particular situations, conferring discretionary power upon courts to terminate, annul, modify, or place conditions upon the stay. *Id.* This includes the authority to order retroactive relief from stay (i.e., to annul the stay), although this requires a "measurably greater showing" than other forms of relief from stay in part because of the domino effect that could be set off by any normalization of retroactive relief, possibly tempting creditors to pursue claims regardless of the automatic stay. *Id.* at 977.

In *Soares*, the First Circuit Court of Appeals explicitly stated that it could not write a standard for annulment under § 362(d) that lends itself to "mechanical application." *Id.* The First Circuit provided two examples of the type of circumstances that make "a rarely dispensed remedy like retroactive relief from the automatic stay" appropriate before explaining that, ultimately, such relief must "rest on a set of facts that [are] both unusual and unusually compelling." *Id.* ("These examples–a creditor's lack of notice or a debtor's bad faith–clearly do not exhaust the possibilities."). Courts have since considered a variety of factors when

determining whether retroactive relief is appropriate, such as if grounds for relief from the stay existed and a motion for relief from stay, if filed, would likely have been granted prior to the automatic stay violation, and if failure to grant retroactive relief would cause unnecessary expense to the creditor. *In re Stockwell*, 262 B.R. 275, 281 (Bankr. D. Vt. 2001) (citing multiple cases).

While the facts may support retroactive relief, the Court does not reach this issue. The Bankruptcy Appellate Panel for the First Circuit has clearly stated that it is an abuse of discretion, "amounting to a denial of due process, for [a] bankruptcy court to grant [a creditor] retroactive relief from stay with no notice to the parties that such a result might be in the offing." *Melendez Colon v. Rivera* (*In re Melendez Colon*), 265 B.R. 639, 644 (B.A.P. 1st Cir. 2001). Here, like in *Melendez Colon*, there is no indication in the record that the question of retroactive stay relief was ever raised by, or suggested to, the parties. In fact, Ms. Wallace arguably stipulated that she violated the automatic stay when she stated that "[t]he issue here . . . is not whether a stay violation occurred; the issue is whether the [damages] listed in [Mr. Deane's affidavit] were actually caused by that violation." D.E. 122, ¶ 40. Thus, where neither the parties nor the Court have discussed or suggested retroactive relief to date, it would be "impermissibly unfair" for this Court to order retroactive relief for Ms. Wallace even if the court otherwise determined such relief to be appropriate. *See In re Melendez Colon*, 265 B.R at 644.

Because Ms. Wallace violated the automatic stay with the Motion to Enforce, the motion itself is void ab initio. *See In re Advent Corp.*, 24 B.R. 612, 614 (B.A.P. 1st Cir. 1982). And, because the motion is void ab initio, the resultant March 4, 2024 enforcement order is also, necessarily, void. *Cf. C.W. Mining Co. v. Bank of Utah* (*In re C.W. Min. Co.*), 465 B.R. 226, 237 ("To be void is to be invalid, of no legal force or effect or incapable of being enforced by law. As

the Tenth Circuit has explained, 'void' does not mean never occurring—it means the law does not recognize the act. . . . [O]rders or judgments entered in violation of the stay have no legal effect.") (citing *Sender v. Simon*, 84 F.3d 1299, 1308–09 (10th Cir. 1996)). It follows, then, that if the Motion for Contempt in 2026 was predicated solely on the State Court's March 2024 enforcement order, the Motion for Contempt is necessarily void as well, given it is based wholly on a void proceeding. Looking at the record, though, this is not the case.

The Motion for Contempt form completed by Ms. Wallace states that she claimed "the other party [Mr. Deane] is in contempt for willfully failing or refusing to obey the Court's Judgment or Order in this case, dated [February 14, 2023 and March 4, 2024], concerning . . . [d]istribution of property[.]" D.E. 50, page 21. Respectively, these dates reference the State Court's original pre-petition divorce judgment (which, to be crystal clear, is not void) and the State Court's March 2024 enforcement order (which is void). To the extent that the Motion for Sanctions filed by Ms. Wallace in 2026 is predicated on non-void motions, orders, or judgments, such as the original divorce judgment, the Court does not hold Ms. Wallace's 2026 Motion for Sanctions (and any resulting judgment or orders) to be void due to Ms. Wallace's violation of the automatic stay.

**Conclusion.**

Ms. Wallace willfully violated the automatic stay in place by filing a Motion to Enforce during Mr. Deane's pending bankruptcy case. However, Mr. Deane failed to meet his burden by proving that the claimed damages are the result of that violation and failed to substantiate the amounts of his claimed actual damages. The Motion is denied.

Dated: September 18, 2026

/s/ Peter G. Cary
Chief Judge Peter G. Cary
United States Bankruptcy Court
for the District of Maine