**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In Re:<br><br>**JOHN DANIEL DEANE,**<br><br>Debtor. | Chapter 7<br>Case No. 23-20165 |

**MEMORANDUM OF DECISION**

Debtor John Daniel Deane filed a Motion to Enforce Discharge Injunction and for Contempt Sanctions; and for an Injunction Enjoining State Court Proceedings on June 18, 2026 (the "Motion"). Docket Entry ("D.E.") 68. He seeks relief against Carrington Mortgage Services, LLC ("Carrington") pursuant to 11 U.S.C. §§ 105(a) and 524(a)(2). *Id.* The Court finds no basis in fact or law for the relief sought by the Debtor, and the motion is denied for the reasons below.

**Facts.**[1]

On June 26, 2023, Mr. Deane borrowed $306,801.00 from Carrington (the "Loan"). Carrington's Motion For Relief From Automatic Stay, ¶ 3 and Ex. A, D.E. 35. The Loan was memorialized in a promissory note which provided that Mr. Deane would repay the Loan over thirty years, with the first payment being due on August 1, 2023 (the "Note"). *Id.* On the same day, in order to provide security for the Loan, Mr. Deane conveyed to Carrington a mortgage deed of his property located at 1049 Denmark Road, Denmark, Maine (the "Property"). *Id.* ¶¶ 5, 6 and Ex. B; *see also* Schedules A/B, D, and Statement of Financial Affairs, Question 6, D.E. 1.

[1] For the facts relied upon by the Court in considering the Motion, the Court looked to its docket, admissions of the parties, undisputed facts asserted in the pleadings of the parties, and facts to which the Court can take appropriate judicial notice.

Mr. Deane filed for bankruptcy relief almost six weeks later pursuant to chapter 7 of the United States Bankruptcy Code. D.E. 1. Later, Carrington requested relief from the stay on December 20, 2023 asserting that Mr. Deane made only one payment on the Loan and that it was entitled to relief for cause pursuant to 11 U.S.C. § 362(d)(1). Worksheet in Support of Motion for Relief from Stay. D.E. 35-4, ¶¶ 13–15.

The first hearing on this motion was held on January 23, 2024. There, Mr. Deane and counsel for Carrington appeared and asked the Court to extend the deadlines to file a reaffirmation agreement and for the entry of discharge until March 29, 2024 so that the parties could continue their negotiations in an effort to settle their disputes. D.E. 43. The Court granted their requests and continued the stay relief hearing until March 12, 2024. D.E.s 42, 43. The continued hearing on the motion for relief from stay was held on that day. Counsel for Carrington appeared but Mr. Deane did not. The Court granted Carrington's motion. D.E. 46. Shortly thereafter, an order of discharge entered, and the bankruptcy case was closed on April 8, 2024. D.E 48.

Over two years later, Mr. Deane filed a motion to reopen the case to enforce the discharge and for the issuance of sanctions against Carrington. D.E. 50. The Court reopened the case on June 16, 2026, D.E. 66, and two days later, Mr. Deane filed the Motion. D.E. 68.

**Discussion.**

Through his Motion, Mr. Deane alleges that Carrington undertook improper post-discharge collection actions in violation of the discharge injunction. Specifically, those actions include:

> "(a) prosecuting a state court foreclosure action based on a mortgage instrument that was discharged of record in 2023;

> (b) presenting the Debtor with a loan modification offer that seeks to capitalize thousands of dollars in discharged pre-petition interest, fees, and improper escrow advances;
>
> (c) calculating a current loan balance that is mathematically impossible and inflated with charges for property taxes paid on the wrong parcel of land; and
>
> (d) forcing the Debtor to participate in a state-court-mandated mediation under threat of foreclosure."

D.E. 68, ¶ 2. In support of the Motion, Mr. Deane has filed 14 pleadings consisting of at least 320 pages.[2] Much of the material is irrelevant, and many of the "facts" that Mr. Deane asserts are erroneous, inaccurate, or inapplicable.

The burden is on Mr. Deane to show, by clear and convincing evidence, that Carrington violated the discharge injunction. *Kirby v. 21st Mortg. Co.* (*In re Kirby*), 599 B.R. 427, 440 (B.A.P. 1st Cir. 2019) (citing *Ramírez Rosado v. Banco Popular de P.R.* (*In re Ramírez Rosado*), 561 B.R. 598, 605 (B.A.P. 1st Cir. 2017)). Because he seeks relief against Carrington under 11 U.S.C. § 524(a)(2), to prevail he must establish that Carrington "(1) ha[d] notice of the debtor's discharge . . . ; (2) intend[ed] the actions which constituted the violation; and (3) act[ed] in a way that improperly coerce[d] or harasse[d] the debtor." *Bates v. CitiMortgage, Inc.* (*In re Bates*),

---

[2] Those pleadings are: Motion to Enforce Discharge Injunction and for Contempt Sanctions; and for an Injunction Enjoining State Court Proceedings, D.E. 68, 37 pages, filed on 6/18/2026; Notice of Errata, D.E. 75, 2 pages, filed on 6/22/2026; Debtor's Supplemental Brief in Support of Motion to Enforce Discharge Injunction and for Contempt Sanctions, D.E. 79, 73 pages, filed on 7/2/2026; Debtor's Notice of Additional Supplemental Evidence in Support of Motion to Enforce Discharge Injunction and for Contempt Sanctions, D.E. 82, 36 pages, filed on 7/6/2026; Debtor's Emergency Motion for Temporary Restraining Order and Preliminary Injunction to Enforce the Discharge Injunction, D.E. 88, 50 pages, filed on 7/13/2026 [Motion DENIED on record at 7/28/2026 hearing, corresponding Minute Order at D.E. 119]; Emergency Notice of State Court Proceedings in Support of Docs. 68 and 88, D.E. 92, 14 pages, filed on 7/13/2026; Debtor's Notice of Supplemental Affidavit and Exhibits in Support of Pending Motions, D.E. 93, 62 pages, filed on 7/16/2026; Debtor's Supplemental Objection to Creditor's Emergency Motion for Enlargement of Time (DOC. 99), D.E. 104, 4 pages, filed on 7/21/2026; Debtor's Reply to Creditor's Preliminary Opposition and Supplemental Objection to Request for Judicial Notice, D.E. 105, 9 pages, filed on 7/21/2026; [Proposed] Order Granting Debtor's Emergency Motion for TRO and Preliminary Injunction, Enforcing Discharge Injunction, and Enjoining State Court Proceedings, D.E. 106, 2 pages, filed on 7/21/2026; Debtor's Reply to Creditor's Supplemental Opposition to Motion to Enforce Discharge Injunction, D.E. 114, 7 pages, filed on 7/27/2026; Debtor's Supplemental Notice in Support of Motion to Enforce Discharge Injunction (DOC. 68), D.E. 124, 8 pages, filed on 8/13/2026; Debtor's Second Supplemental Notice of Post-Hearing Discharge Injunction Violations in Support of Motion to Enforce (DOC. 68), D.E. 125, 8 pages, filed on 8/31/2026; and Debtor's Reply to Carrington's Response (DOC. 126), D.E. 127, 6 pages, filed on 9/1/2026.

844 F.3d 300, 304 (1st Cir. 2016) (quoting *Best v. Nationstar Mortg. LLC*, 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015)). The First Circuit noted:

> We assess whether conduct is improperly coercive or harassing under an objective standard—the debtor's subjective feeling of coercion or harassment is not enough. *In re Lumb, 401 B.R. at 6; see Pratt v. Gen. Motors Acceptance Corp.* (*In re Pratt*), 462 F.3d 14, 19 (1st Cir. 2006). We have no "specific test" to determine whether a creditor's conduct meets this objective standard, but we consider the facts and circumstances of each case, including factors such as the "immediateness of any threatened action and the context in which a statement is made." *Diamond v. Premier Capital, Inc.* (*In re Diamond*), 346 F.3d 224, 227 (1st Cir. 2003); *see In re Pratt*, 462 F.3d at 20. "[A] creditor violates the discharge injunction only if it acts to collect or enforce a prepetition debt; bad acts that do not have a coercive effect on the debtor do not violate the discharge." *In re Lumb*, 401 B.R. at 7.

*In re Bates*, 844 F.3d at 304.

Mr. Deane asserts several arguments in support of the Motion, but the Court finds none of them availing.

1. <u>Carrington is seeking to foreclose on a discharged mortgage.</u>

Mr. Deane first asserts that Carrington's 2025 foreclosure efforts are premised upon a mortgage deed that was discharged in 2023. Motion, D.E. 68, ¶¶ 9–12. He is wrong. While Mr. Deane is correct that on August 9, 2023 Carrington discharged a mortgage on the Property dated July 30, 2018, Carrington's 2025 foreclosure action is premised upon a mortgage on the Property dated June 26, 2023. Carrington's Motion For Relief From Automatic Stay, ¶¶ 4, 5 and Ex. B, D.E. 35; Carrington Mortgage Services, LLC's Request for Judicial Notice in Support of Supplemental Opposition to Debtor's Motion, D.E. 112, Ex. 6, ¶ 6.

2. <u>During the Mandatory Mediation Process, Carrington presented Mr. Deane with a loan modification offer that seeks to capitalize thousands of dollars in discharged pre-petition interest, fees, and improper escrow advances.</u>

Mr. Deane next complains that Carrington's post-discharge foreclosure efforts, specifically the pre-petition interest, fees, and escrow advances reportedly sought by Carrington in the mediation program of the state court foreclosure diversion program, violate the discharge injunction. Motion, D.E. 68, ¶2. He is wrong about this as well.

As mentioned above, in 2023, Carrington filed its motion for relief from the automatic stay under 11 U.S.C. §362(d)(1) in this case in order to continue its state court foreclosure action related to the June 26, 2023 mortgage deed on the Property. It scheduled the hearing for January 23, 2024. D.E. 35. According to the certificate of service also filed on that date, Carrington provided notice to Mr. Deane of that motion. D.E. 35-3. Mr. Deane, who was then working with Carrington to reaffirm his obligations to it in order to retain the Property, did not object to that motion. Nor did he appear at the hearing. The Court granted Carrington's request for relief from the stay and entered an order which provided in part:

> "[Carrington] is granted relief from the section 362 automatic stay and the stay imposed by Bankruptcy Procedure 4001(a)(3) for the purpose of exercising its non-bankruptcy rights and remedies under its agreements with the Debtor and under applicable law, including, without limitation, (a) taking possession of the property described as 1049 Denmark Road, Denmark, Maine 04022 (the "Property"); (b) foreclosing its mortgage thereon or obtaining a deed-in-lieu of foreclosure; and (c) seeking to obtain, if necessary, eviction of the Debtor and any occupant from the Property."

D.E. 46.

Carrington then continued forward in the state court foreclosure action against the Property without asserting personal claims against Mr. Deane. This was in accord with the Court's relief from stay order and its April 1, 2024 discharge order of Mr. Deane's personal obligations to Carrington. D.E. 48. As noted in the "Explanation of Bankruptcy Discharge in a Chapter 7 Case" section of the discharge order: "[A] creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For

example, a creditor may have the right to foreclose a home mortgage . . . ." As the First Circuit has noted: "[d]espite its broad scope, the discharge injunction does not enjoin a secured creditor from recovering on valid prepetition liens, which, unless modified or avoided, ride through bankruptcy unaffected and are enforceable in accordance with state law." *Canning v. HSBC Mortg. Servs.* (*In re Canning*), 706 F.3d 64, 69 (1st Cir. 2013).

That is precisely what Carrington did here, and Mr. Deane has offered no support for his allegations that that Carrington has improperly sought personal relief against Mr. Deane, as opposed to seeking amounts it claims due from the foreclosure sale of the Property. Mr. Deane fails to appreciate the important distinction between the discharge's effect on *in personam* versus *in rem* obligations. As the Supreme Court has observed:

> A mortgage is an interest in real property that secures a creditor's right to repayment. But unless the debtor and creditor have provided otherwise, the creditor ordinarily is not limited to foreclosure on the mortgaged property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally. See 3 R. Powell, *The Law of Real Property* ¶ 467 (1990). A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation. See 11 U. S. C. § 727. However, such a discharge extinguishes *only* "the personal liability of the debtor." 11 U. S. C. § 524(a)(1). Codifying the rule of *Long v. Bullard*, 117 U.S. 617, 29 L. Ed. 1004, 6 S. Ct. 917 (1886), the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy. See 11 U. S. C. § 522(c)(2); *Owen v. Owen*, 500 U.S. 305, 308-309, 114 L. Ed. 2d 350, 111 S. Ct. 1833 (1991); *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 114 L. Ed. 2d 337, 111 S. Ct. 1825 (1991); H. R. Rep. No. 95-595, *supra*, at 361.

*Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991) (pagination omitted).

Mr. Deane's obligations to Carrington under the Note were secured by the June 26, 2023 mortgage deed. While the April 1, 2024 discharge relieved Mr. Deane of his personal (or *in personam*) obligation to Carrington on the Note, it did not discharge the Mortgage which secured the obligation. *See id*. at 82–83. So, even though Mr. Deane was relieved of his personal obligation to repay the Note, the bankruptcy discharge did not prevent Carrington from

proceeding against the Property and foreclosing upon the Mortgage. In addition, charges associated with Carrington's enforcement of its security interest (i.e., the Mortgage), which may include accrued interest, real estate taxes, and legal fees, are part of that debt. *See Jester v. Wells Fargo Bank N.A.* (*In re Jester*), BAP No. EO-15-002, 2015 WL 6389290, at *8 (B.A.P. 10th Cir. 2015), aff'd, 656 F. App'x. 425 (10th Cir. 2016).

3. Carrington incorrectly calculated a current loan balance that is mathematically impossible and it improperly inflated the loan balance with charges or property taxes paid on the wrong parcel of land.

Mr. Deane alleges that the loan balance claimed by Carrington is mathematically impossible and improperly inflated. Motion, D.E. 68, ¶¶ 13–17. Specifically, he maintains that "[t]he current 2023 Mortgage originated at $306,801.00" and Carrington's modification offer "claims a current principal of $306,530.32 (a reduction of only $270.68 in approximately two years) and $56,643.47 in interest. At a 3% annual interest rate, two years of interest on the original principal would total approximately $18,408. The more than $38,000 discrepancy strongly suggests that Carrington impermissibly commingled discharged pre-petition amounts from the 2018 Mortgage and other unauthorized fees into its current claim." *Id.* ¶¶ 16–17 (formatting omitted).

This argument is off base on several fronts. As noted above, the 2018 Mortgage does not apply. Also, the interest rate on Carrington's 2023 loan to Mr. Deane is 6.625% per annum, not 3% as he incorrectly alleges. Motion for Relief From Stay, Worksheet in Support of Motion for Relief from Stay/Affidavit, ¶ 10 and Ex. A, § 2, D.E. 35.[3] Third, Mr. Deane does not factor in the late charges resulting from his default. Supplemental Brief in Support of Motion to Enforce

[3] The Court presumes that Mr. Deane erroneously believed that the 3% interest rate applied because that was the interest rate under his 2022 loan modification agreement with Carrington. Debtor's Supplemental Brief in Support of Motion to Enforce Discharge Injunction and for Contempt Sanctions, D.E. 79 Ex. D p. 30 of 73.

Discharge Injunction and for Contempt Sanctions, D.E. 79, Ex. F, page 60 of 73. Nor does he include the property taxes and insurance fees advanced by Carrington.

On the subject of taxes, Mr. Deane maintains that Carrington "padded" the balance it claims due in the foreclosure action by paying real estate taxes from his escrow account on a parcel that he does not own. Motion, ¶¶ 18–21. D.E. 68. Putting aside how there could be money in an escrow account for a loan that Mr. Deane made one payment on since its inception and though June of 2025,[4] Mr. Deane's claim that the property identified by the Town of Denmark, Maine as Parcel ID No. 021-012 "is not and never has been" his, *id.* ¶ 20, appears to be a falsehood. *See* DE 101-1 (Quitclaim Deed in his name); *see also* Town of Denmark, Maine Official Website/Official Documents/Tax Forms and Maps/AXISGIS - Online Mapping & Assessment Database https://www.axisgis.com/denmarkme/# (last visited September 14, 2026). The deed, as well as the records in the Town of Denmark's database, indicate that he is the owner of that parcel and has been since July 27, 2023.

However, Mr. Deane may be onto something in that, according to the deed for Parcel ID No. 021-012, Mr. Deane became its owner one month <u>after</u> he conveyed the Mortgage for the Property to Carrington. If Mr. Deane is correct that Carrington used his funds (through the escrow account) or is seeking to recover from the foreclosure sale of the Property for tax expenditures for property that is not subject to the Note and Mortgage, that may be improper. However, while those expenditures may be subject to challenge in the state court foreclosure process, they are not violations of the discharge injunction. As already discussed, Carrington was well within its rights to pursue the foreclosure post-discharge.

---

[4] The Court does not know if any payments on the loan have been made by Mr. Deane since the filing of the state court foreclosure action.

4. Carrington's post discharge foreclosure actions, including its participation in the foreclosure mediation process, constitute willful and contemptuous conduct warranting sanctions.

Mr. Deane also alleges that various other actions by Carrington constitute improper coercion to pay a discharged obligation in violation of 11 U.S.C. § 524(a)(2). These include participation in the Maine Foreclosure Diversion Program and post-discharge communications about the Loan.

For example, he maintains that Carrington improperly "forced" him to attend mediation in the state court foreclosure action. But Carrington obtained relief from stay to move forward in its foreclosure action against the Property and mediation is part of the foreclosure process. Foreclosures of owner-occupied residential properties with no more than four units, such as the Property, must comply with the requirements of the Foreclosure Diversion Program set forth in M. R. Civ. P. 93. *See* 14 M.R.S.A. § 6321-A (3); *Residential Mortgage Loan Tr. 2013-TT2 v. Lloyd*, 183 F. Supp. 3d 189, 191 (D. Me. 2016). Although the Court does not have the state court foreclosure docket before it and cannot ascertain whether Mr. Deane requested mediation or whether the court scheduled it pursuant to M. R. Civ. P. 93(c)(1), either way, the mediation process of the foreclosure action does not amount to improper coercion or harassment of Mr. Deane to pay a discharged debt. 11 U.S.C. 524(a)(2) "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor". (Emphasis added). It does not prevent Carrington's advancement of the *in rem* foreclosure action, nor its participation in a state-mandated mediation process.

As for post-discharge written communications to Mr. Deane by Carrington about the Loan, there were eight of which the Court is aware. Two were monthly mortgage statements

dated December 17, 2024 (D.E. 112-4) and June 17, 2025 (D.E. 112-5). One was a June 15, 2025 Notice of Right to Cure (D.E. 112-6, pages 46–51). The five remaining communications, each a response to an inquiry by Mr. Deane, are dated June 1, 2026 (D.E. 68, Ex. A), June 24, 2026 (D.E. 78, Ex. A), July 30, 2026 (D.E. 126-1, Ex. 1), August 6, 2026 (D.E. 124, Ex. A), and August 21, 2026 (D.E. 125, Ex. A). These responses were communicated during the state court mediation process or were required by the foreclosure action. In addition, every single one of them, with the possible exception of the June 1, 2026 letter, contained bankruptcy and mini-miranda warnings.[5] Evaluating them through the prism of holdings in *In re Bates*, *In re Best*, *In re Lumb*, *In re Pratt*, and *In re Kirby*, they do not give rise to an inference of coercion. *E.g. Kirby v. 21st Mortg. Corp.* (*In re Kirby*), 589 B.R. 456, 468 (Bankr. D. Me. 2018), aff'd, 599 B.R. 427 (B.A.P. 1st Cir. 2019) ("Thus, in order for [a creditor] to protect the in rem rights that §

---

[5] The bankruptcy notices all state:

> **IMPORTANT BANKRUPTCY NOTICE** – If you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not reaffirmed the mortgage, or if you are the subject of a pending bankruptcy proceeding, this letter is not an attempt to collect the debt from you but merely provides informational notice regarding the status of the loan. If you are represented by an attorney with respect to your mortgage, please direct this document to your attorney.
>
> D.E. 78, Ex. A, page 2; D.E. 112-4, page 3; D.E. 112-5, page 3; D.E. 112-6, page 50; D.E. 126-1, Ex. 1, page 4; D.E. 124, Ex. A, page 2; and D.E. 125, Exh. A, page 2.

The Mini-Miranda warnings all state:

> This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.
>
> D.E. 78, Ex. A, page 2; D.E. 112-4, page 3; D.E. 112-5, page 3; D.E. 112-6, page 50; D.E. 126-1, Ex. 1, page 4; D.E. 124, Ex. A, page 2; and D.E. 125, Ex. A, page 2.

Only one page of the three-page June 1, 2026 letter was filed by Mr. Deane. D.E. 68, Ex. A. A review of the other three-page letters from Carrington reveals that the bankruptcy and mini-miranda warnings appear on page 2. See D.E. 78, Ex. A, page 2; D.E. 124, Ex. A, page 2, and D.E. 125, Ex. A, page 2. The Court would not be at all surprised if page 2 of the June 1, 2026 letter contains those warnings. Even if it did not, that letter contains no collection threats against Mr. Deane personally and Carrington's delivery of it to Mr. Deane does not implicate 11 U.S.C. §524(a)(2).

524 recognizes and preserves, it was required to send the Default Letter. Though not binding on this Court, the analysis of this same issue in the following cases is persuasive. *See Mele v. Bank of America Home Loans* (*In re Mele*), 486 B.R. 546, 558 (Bankr. N.D. Ga. 2013); *In re Gill*, 529 B.R. 31, 42 (Bankr. W.D.N.Y. 2015). As such, the Default Letter does not violate the discharge injunction.")

5. <u>Final observations by the Court.</u>

The strictures of the Federal Rules of Bankruptcy Procedure apply to cases before the Court. Mr. Deane should be mindful of them, especially Rule 9011(b), which provides:

> (b) Representations to the Court. By presenting to the court a petition, pleading, written motion, or other document—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase litigation costs;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law;
> >
> > (3) the allegations and factual contentions have evidentiary support—or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence—or if specifically so identified, are reasonably based on a lack of information or belief.

Mr. Deane submitted many pleadings and documents which were irrelevant, thereby causing Carrington to spend time winnowing them to discover whether there were any pertinent points. Mr. Deane should be mindful that in addition to the fact that his loan documents permit Carrington to recover its reasonable attorneys' fees from the sale of the Property, Rule

9011(b)(1) requires that he shall not present pleadings for an improper purpose, such as needlessly increasing litigation costs.

Mr. Deane scolded Carrington for mistakenly asserting the interest rate for the Loan. D.E. 100, D.E. 111. However, Mr. Deane put forward many things as facts that were not so and he, unlike Carrington, has made no effort to correct them. Some of those assertions might have been innocent mistakes (for example, the argument that the 2018 Mortgage was applicable or relevant). Others appear to be outright falsehoods (for example, his claim that he never owned Parcel ID No. 021-012). Mr. Deane should be mindful of the demands of Rule 9011(b)(3).

Given the volume of Mr. Deane's submissions and the speed in which he filed them, the Court suspects that he is using artificial intelligence. An unfortunate hallmark of careless AI use in litigation is the citation to nonexistent authority. In one of his numerous submissions, Mr. Deane cites to a September 8, 2021 case from the Northern District of Georgia, "*Shirley Lett*, Adv. Pro No. 19-05244-LRC, 2021 WL 4073322." D.E. 124. When the Court reviewed the docket of the United States Bankruptcy Court for the Northern District of Georgia, it could not find any case for Shirely Lett. A search on that docket for Adversary Proceeding Number 19-05244-LRC located the case of *Ogier v. Trauner*, but that case was neither relevant to the point that Mr. Deane cited it for nor did it contain the quote Mr. Deane attributed to it. When the Court queried Westlaw for the citation 2021 WL 4073322, it uncovered nothing. When the Court queried Westlaw for the <u>quote</u> attributed to the citation, however, it found *Roth v. Nationstar Mortg. LLC* (*In re Roth*), 568 B.R. 139, 145 (Bankr. M.D. Fla. 2017) (quoting *McLean v. McLean* (*In re McLean*), 794 F.3d 1313, 1322 (11th Cir. 2015). This Court will issue a separate order requiring Mr. Deane to file a copy of the case he cited, and if no such case exists, Mr. Deane shall file an explanation for why he quoted and cited to it. While this Court

does not have a standing order or local rule concerning litigants' use of AI, Rule 9011(b), among other rules, governs its use.

Responding to the Motion took this Court more time than the gravamen of the Motion required. This was due in part to Mr. Deane's flooding of the docket with the irrelevant and extraneous filings, none of which advanced Mr. Dean's position one whit.

At this stage, the Court is not sanctioning Mr. Deane, but is warning him to govern his filings in accord with the Rules of Bankruptcy Procedure, including Rule 9011.

**Conclusion.**

The relief requested by Mr. Deane in the Motion and in connection with the Motion is DENIED.

Dated: September 18, 2026

/s/ Peter G. Cary
____________________________
Chief Judge Peter G. Cary
United States Bankruptcy Court
for the District of Maine